FILED

1  J. Kevin Snyder, (SBN: 107509)
   *ksnyder@dykema.com*
2  Vivian I. Kim, (SBN: 272185)
   *vkim@dykema.com*
3  **DYKEMA GOSSETT LLP**
   333 South Grand Avenue
4  Suite 2100
   Los Angeles, California 90071
5  Telephone:  (213) 457-1800
   Facsimile:  (213) 457-1850
6
7  Attorneys for Defendant
   ONEWEST BANK, FSB

2011 JUN 15  PM 3: 20

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY_____

8              **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10               **SANTA ANA DIVISION**

11  JAMES R. BARKS, an individual;          Case No.    **SACV11-00901 RNB**
    DAPHNE BARKS, an individual,
12
                 Plaintiffs,               **NOTICE OF REMOVAL BY**
13                                          **ONEWEST BANK, FSB**
         vs.
14                                          [28 U.S.C. §§ 1332, and 1441, Diversity
15  ONEWEST BANK, formerly LA               Jurisdiction]
    JOLLA BANK, FSB; RON
16  MARTINDALE, and individual; and         [Superior Court of California, County of
    DOES 1-50, inclusive,                   Orange, Case No. 30-2011-00474722]
17
                 Defendants.                Complaint Filed May 12, 2011
18

19       TO THE CLERK OF THE ABOVE-ENTITLED COURT:

20       PLEASE TAKE NOTICE that Defendant OneWest Bank, FSB (incorrectly

21  sued as "OneWest Bank, formerly La Jolla Bank, FSB") ("OneWest") hereby

22  removes the above captioned action from the Superior Court of California, County of

23  Orange, to the United States District Court for the Central District of California.

24  Removal is pursuant to 28 U.S.C. § 1331 and 1441; 12 U.S.C. 1464(x). As grounds

25  for the removal of this case, OneWest states as follows:

26                       **BACKGROUND**

27       1.   On May 12, 2011, Plaintiffs James R. Barks and Daphne Barks

28  ("Plaintiffs") commenced this action in the Superior Court of the State of California

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

in and for the County of Orange, entitled *JAMES R. BARKS, an individual; DAPHNE BARKS, an individual, Plaintiffs, vs. ONEWEST BANK, formerly LA JOLLA BANK, FSB; RON MARTINDALE, and individual; and DOES 1-50, inclusive, Defendants*, as Case Number 30-2011-00474722 (the "Complaint").  A true and correct copy of the Complaint is attached as Exhibit 1.

2.    The Complaint was served on OneWest on May 16, 2011.

3.    On June 2, 2011, Plaintiffs filed a First Amended Complaint ("FAC"), a true and correct copy of which is attached hereto as Exhibit 2.  The FAC was served on OneWest on June 2, 2011.

4.    The Complaint and FAC arise out of a dispute concerning the terms of a loan made to Plaintiffs in the sum of $2,080,000 by La Jolla Bank, FSB ("La Jolla") in or about 2007 for the purpose of acquiring certain land upon which Plaintiffs intended to construct a residence for the purpose of resale (the "Loan").  In February, 2010, La Jolla was closed by the Office of Thrift Supervision and OneWest acquired certain of La Jolla's assets from the Federal Deposit Insurance Corporation ("FDIC") as Receiver for La Jolla and pursuant to a Purchase and Assumption Agreement dated February 19, 2010.  Among the assets acquired by OneWest from the FDIC, was the Loan.

5.    The Complaint and FAC purport to allege claims for rescission of the promissory note and deed of trust, intentional misrepresentation, injunctive relief, and breach of contract.  All but the claim for misrepresentation are pled against OneWest.

## DIVERSITY JURISDICTION

6.    This is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332(a), and is one which may be removed to this Court by OneWest pursuant to the provisions of 28 U.S.C. § 1441(a), in that there is complete diversity of citizenship among the parties pursuant to 28 U.S.C. § 1332(c) and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

7.    Plaintiffs are residents, and citizens, of the state of Missouri.  FAC ¶ 1.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

2

1    8.    OneWest is a federally chartered savings bank organized pursuant to the

2   laws of the United States with its home office in Pasadena, California.  As such, for

3   purposes of diversity jurisdiction, OneWest is a citizen of the State of California.  12

4   U.S.C. 1464(x).

5    9.    Ron Martindale is an individual and a citizen of the State of California.

6   FAC ¶ 3

7    10.    Pursuant to 28 U.S.C. § 1441(a), the citizenship of defendants sued

8   under fictitious names shall be disregarded when determining removal jurisdiction.

9   Accordingly, the citizenship of Does 1 through 50 should not be considered when

10  determining whether jurisdiction based on diversity of citizenship exists in this case.

11    11.    As set forth above, there is complete diversity between all Plaintiffs and

12  the defendants joined in this action.

13    12.    Furthermore, it is clear that the amount in controversy in this matter

14  exceeds $75,000 exclusive of interest and costs.  In cases involving mortgage loans,

15  the amount in controversy may be established by the amount of the loan in issue.

16  *Nguyen v. Wells Fargo Bank, N.A.*, No. C-10-4081-EDL, ____F. Supp 2d_____,

17  2010 WL 4348127, *5-6 (E.D. Cal. Oct. 27, 2010) (amount in controversy exceeded

18  threshold for federal diversity jurisdiction in removed action brought by borrower

19  against lenders, alleging wrongful foreclosure and related claims as to property

20  secured by deed of trust; proper measure for jurisdictional amount was full loan

21  amount); *Contimortgage Corp., v. Anglezis, 173* Fed. App'x. 458,460, Nos. 03-3471,

22  03-4192, 2006 WL 725079, *2 (7th Cir. Nov. 30, 2004) ("The amount in controversy

23  was the unpaid principal balance of about $171,000 on the defaulted loan."); *Land*

24  *Holdings (St. Thomas) Ltd. v Mega Holdings, et al.*, 283 F.3d 616, 620 (3d Cir. 2002)

25  ("Because this foreclosure action concerns a multi-million dollar parcel of property,

26  the amount in controversy requirement was easily met.. ."); *Duran v. Aurora Loan*

27  *Services*, No. 09-0138,2009 WL 1110645, *3 (E.D. Cal. Apr. 24, 2009) (suggesting

28  that a party may "establish that the amount in controversy exceed[s] the jurisdictional

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

3

1  amount of $75,000" by virtue of "I "referenc[ing] a note secured by the property in

2  the amount of $135,000").

3       13.    Here, Plaintiffs expressly seek to rescind the Loan in the amount of

4  $2,080,000.  FAC ¶ 23.  Plaintiffs also seek to recover damages of at least

5  $1,300,000, which they allege are the lost profits attributable to the conduct of

6  OneWest.  FAC ¶ 33.  In addition, Plaintiffs seek punitive damages and attorney's

7  fees. FAC ¶ 26 and Prayer.

8       14.    Accordingly, there is a complete diversity of citizenship, and the amount

9  in controversy in this action exceeds $75,000 exclusive of interest and costs.

10                          **REMOVAL REQUIREMENTS**

11      15.    This Notice of Removal is timely under 28 U.S.C. § 1446(b) because it

12 is filed within thirty (30) days of service of the Complaint on OneWest.  OneWest

13 was personally served with the summons and Complaint on May 16, 2011.  Upon

14 information and belief, none of the other defendants have been served with the

15 summons and Complaint, or the FAC, and their consent to this removal is not

16 required. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988)

17 (requirement for consent applies "only to defendants properly joined and served in

18 the action"); *Salveston v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1429-30

19 ("Our circuit rule is that a party not served need not be joined; the defendants

20 summonsed can remove by themselves.")

21      16.    Removal to this Court is proper pursuant to 28 U.S.C. § 1441(a) because

22 the Central District of California is the federal judicial district embracing the Superior

23 Court of California, Orange County, where the state court action was originally filed.

24      17.    The Southern Division of the Central District of California is proper

25 because it embraces the County of Orange, where the state court action was originally

26 filed.

27

28

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1    18.    OneWest has served notice of the filing of this removal to all parties of

2  record in the State Court Action, and to the Clerk of the Superior Court of California,

3  County of Orange, pursuant to 28 U.S.C. § 1446(d).

4    19.    A copy of all other process, pleadings and orders in the State Court

5  Action are attached to this Notice of Removal as Exhibit 3, as required by 28 U.S.C.

6  § 1446(a).  To the extent there are documents in the state court file that are not

7  included in this Exhibit, OneWest will promptly provide the court with those

8  documents as soon as they are received.

9                                Respectfully submitted,

10  Dated: June 14, 2011                  DYKEMA GOSSETT LLP

11

12                          By: _____

13                                J. Kevin Snyder
                                  Vivian I. Kim
14                                Attorneys for Defendant
                                  OneWest Bank, FSB

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

# EXHIBIT 1

●ORIGINAL

J. SCOTT RUSSO (STATE BAR NO. 155631)
RUSSO & DUCKWORTH, LLP
9090 Irvine Center Drive, 2ⁿᵈ Floor
Irvine, California 92618
Telephone No. (949) 752-7106
Facsimile No. (949) 752-0629

Attorneys for Plaintiffs
James R. Barks and Daphne Barks

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

MAY 1 2 2011

ALAN CARLSON, Clerk of the Court
*A. Rincon*
BY  A. RINCON

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

JAMES R. BARKS, an individual; DAPHNE
BARKS, an individual,

        Plaintiffs,

vs.

ONEWEST BANK, formerly LA JOLLA
BANK, FSB; RON MARTINDALE, and
individual; and DOES 1-50, inclusive,

        Defendants.

Case No.:  **30-2011**

**0 0 4 7 4 7 2 2**

JUDGE FRANZ E. MILLER
DEPT. C14

**COMPLAINT FOR:**

**1) RESCISSION OF PROMISSORY
NOTE AND DEED OF TRUST BASED
ON FRAUD;
2) INTENTIONAL AND NEGLIGENT
MISREPRESENTATION AND
2) INJUNCTIVE RELIEF**

**(JURY TRIAL DEMANDED)**

    For causes of action against Defendant One West Bank, formerly La Jolla Bank, FSB
("OneWest Bank"), Ron Martindale, and DOES 1-50 (collectively "Defendants"), Plaintiffs
James R. Barks and Daphne Barks ("Plaintiffs" or "Barks") allege as follows:

<u>**PARTIES**</u>

    1.    Plaintiffs James R. Barks ("Mr. Barks") and Daphne Barks are individuals and a
married couple now residing in the State of Missouri.

    2.    Plaintiffs are informed and believe, and based thereon allege, that Defendant
OneWest Bank, formerly La Jolla, FSB is a federally insured bank with offices in the County of
Orange, State of California.

-1-
COMPLAINT

3. Defendant Ron Martindale ("Martindale") is an individual. The Barks are informed and believe, and based thereon allege, that Martindale resides in either the Counties of Orange or San Diego, California. The Barks are informed and believe, and based thereon allege, that Martindale was at all times relevant to this complaint an officer and authorized agent of La Jolla Bank.

4. Upon information and belief, Plaintiffs allege that at all times mentioned herein each of the Defendants was and now is the agent, servant, employee, representative, and alter ego of each of the remaining Defendants, is the parent, successor, subsidiary, and/or otherwise affiliated with the remaining Defendants, and in doing the things hereinafter alleged were acting within the scope of its or his authority of such agent, servant, employee, representative, and alter ego with permission and consent of the remaining Defendants.

## FIRST CAUSE OF ACTION

### (RESCISSION BASED ON FRAUD)

#### (Against OneWest and DOES 1 through 25, inclusive)

5. Plaintiffs reallege and incorporate all prior paragraphs as if fully set forth at length.

6. Plaintiff James R. Barks has been a builder of custom homes for sale in Southern California. The Barks have received acquisition and construction loans from La Jolla Bank.

7. The real property at issue is 233 Morning Canyon, Corona del Mar, California ("Subject Property").

8. In November 2007, the Barks identified the Subject Property for re-development with a new custom home. The purchase price for the Subject Property would be $3,250,000. The existing property owner had approved plans for the new home. The Barks applied for a new loan from La Jolla Bank for both acquisition and construction. Martindale handled the loan for La Jolla Bank. There was to be swing loan for acquisition to be consolidated with the construction loan.

9. On November 27, 2007, Martindale sent Mr. Barks the e-mail enclosed as **Exhibit "A"** which contained an Underwriting Analysis for an acquisition swing loan and

-2-
COMPLAINT

1   construction loan. The total loan amount was to be $3,475,000 ("Loan Amount"). La Jolla

2   Bank's appraised value of the completed project was $6,000,000. The Underwriting Analysis

3   required the Barks to pay a down payment of $1,137,500 and "L.I.P. Deposit" of $26,373.

4   Martindale's e-mail stated "I spoke to Dave [Yoder] and La Jolla Bank would offer you a 65%

5   LTV [loan to value], 2 year swing loan for the acquisition at 7.5% with ¾ point…and then a

6   construction loan for 18 months at prime + floating and ½ point on new money." 65% loan to

7   value was a $3,900,000 loan.

8          10.     The Barks executed and returned the Underwriting Analysis to Martindale. The

9   Underwriting Analysis states that the "Land Draw" portion of the Loan Amount, i.e., the "swing

10  loan", was to be $2,112,000. On December 21, 2007, La Jolla Bank provided the "swing loan"

11  Promissory Note for $2,080,000.  Enclosed as **Exhibit "B"** is a copy of the Promissory Note

12  (the "Note") and Deed of Trust ("Deed of Trust"), signed by the Barks. The terms were as set

13  forth in the Underwriting Analysis.

14         11.     The original of the Underwriting Analysis is in Defendants' possession.   The

15  Barks do not have the executed documents.

16         12.     On December 28, 2007, escrow closed on Barks' purchase of the Subject

17  Property. The Barks deposits into escrow totaled $1,207,800.  La Jolla Bank paid $2,080,000.

18         13.     Upon the close of escrow, the Barks secured a building permit and demolished the

19  existing structures on the Subject Property and commenced grading in contemplation of the new

20  construction.

21         14.     In April 2008, the Barks were ready to start construction of the new home. Mr.

22  Barks advised Martindale that the Barks were ready for the construction funding and the Barks

23  provided all the documentation requested. La Jolla Bank was slow in providing the paperwork

24  for the construction funding.

25         15.     On June 9, 2008, Martindale sent barks the "Courtesy Notice Of Loan Terms", a

26  copy which is enclosed together with the e-mail transmittal as **Exhibit "C"**. The loan terms

27

28

1    were for a $3,450,000[1] loan, thus, incorporating the swing loan. The terms were as set forth in

2    the Underwriting Analysis, with one major change; the L.I.P. Deposit was increased from

3    $26,373 to $287,390.  Mr. Barks called Martindale and asked what the L.I.P. Deposit was and

4    was told that it was "additional cash Barks had to put into the project" himself before he would

5    receive the construction financing. Barks argued that Martindale never advised him that any

6    more money was required. The Barks did not have the additional $261,217 available to put into

7    the project and La Jolla Bank refused to provide the balance of the Loan Amount.

8         16.    The Barks are informed and believes, and based thereon allege, that Martindale

9    never had received loan committee approval for the construction loan portion of the Loan

10   Amount.  The Barks are informed and believe, and based thereon alleges, that David Yoder,

11   Director of Loan Originations and Vice President of La Jolla Bank, had not secured approval for

12   a 65% loan to value loan, based on a $6,000,000 appraised value, which was up to $3,900,000,

13   and that Martindale's states were knowingly false and intended to induce the Barks to enter into

14   the Land Draw loan to generate loan commissions, knowing but not telling the Barks that they

15   may need to pay substantially more money.

16        17.    The Barks would not have purchased the Subject Property, signed the Note or

17   Deed of Trust, if the $287,390 L.I.P. Deposit had been in the Underwriting Analysis or otherwise

18   had been disclosed.  The Barks would not have purchased the Subject Property, signed the Note

19   or Deed of Trust, but for Martindale's representation that the 65% loan to value had already been

20   approved. Barks reliance upon Martindale's representations was reasonable.

21        18.    The Barks were not able to secure construction financing from another lender.

22   Because La Jolla Bank refused to provide Loan Amount, the project came to a standstill and the

23   new home was never constructed.

24        19.    The building permits expired and the City of Newport Beach forced the Barks to

25   bring the lot at the Subject Property back to its original grade.  The Barks paid $130,602 in

26   construction costs.

27

28
_____
[1] It is unclear why the Courtesy Notice Of Loan Terms was for a loan amount of $3,450,000 instead of $3,475,000.
-4-
COMPLAINT

1      20.    But for Martindale's misrepresentation, the new home would have been

2  constructed within 18 months and it would have been sold for at least the $4,638,873 cost of the

3  project.

4      21.    Since June 2008, the value of the Subject Property has declined due to overall

5  market conditions. The principal on the $2,080,000 Promissory Note became due and payable on

6  January 1, 2010, when the note matured.  Barks was forced to default on the $2,080,000

7  Promissory Note and stopped making interest payments.  Prior to defaulting on the $2,080,000

8  Promissory Note, Barks paid $199,470 in interest payments.

9      22.    In its present condition, the fair market value of the Subject Property to a builder

10  is less than the obligation, principal and accrued interest, on the $2,080,000 Note.  Thus, if La

11  Jolla Bank, now OneWest, proceeds with a foreclosure or trustee sale, the Barks have lost their

12  $1,207,800 original investment from December 2007, $199,470 in interest payments and

13  $130,602 in construction costs, all because of Defendants' misrepresentations.

14      23.    The Barks demand rescission of the Note and Deed of Trust, restitution of the

15  sums paid, together with an accounting and offset for the sums they spent in reliance upon

16  Defendants' misrepresentations.

17                    **SECOND CAUSE OF ACTION**

18          **(INTENTIONAL AND NEGLIGENT MISREPRESENATION)**

19          **(Against Martindale and DOES 1 through 25, inclusive)**

20      24.    Plaintiffs reallege and incorporate all prior paragraphs as if fully set forth at

21  length.

22      25.    The Barks reasonably relied upon Defendants' false representations, which were

23  intentional, fraudulent and malicious, with the intention on the part of Defendants, and each of

24  them, of depriving Plaintiff of property or legal rights or otherwise causing injury.  At a

25  minimum, the misrepresentations by Defendants were unreasonable, but nevertheless the Barks

26  reasonably relied upon the misrepresentations. As a result of Defendants' conduct, and the Barks

27  reasonable reliance, the Barks have been damaged in an amount to be proved at the time of trial.

28      26.    Defendants' conduct was willful, wanton and reckless and intended to enrich

1   Defendants at Plaintiffs' expense.  Plaintiffs' allege punitive damages must be awarded to deter

2   and punish Defendants.

3                            **THIRD CAUSE OF ACTION**

4                            **(INJUNCTIVE RELIEF)**

5             **(Against One West and DOES 1 through 25, inclusive)**

6        27.    Plaintiffs reallege and incorporate all prior paragraphs as if fully set forth at

7   length.

8        28.    On April 20, 2011, Defendants recorded a Notice of Trustee's Sale, Unified Sale,

9   a true and correct copy which is attached hereto as **Exhibit "D"**. Defendants have scheduled a

10   trustee sale to foreclose on the Note and Deed of Trust for May 20, 2011. The Note and Deed of

11   Trust were procured by fraud and should be adjudicated rescinded and unenforceable. The Barks

12   first learned about the Notice of Trustee's Sale on May 6, 2011.  The Barks are informed and

13   believe and based thereon allege that OneWest and its trustee did not comply with legal

14   requirements for providing notice in order to proceed with the Trustee's Sale.  The Barks are

15   informed and believe and based thereon allege that OneWest and its trustee have not complied

16   with the requirements of Civil Code Section 2924.

17        29.    The Barks will suffer irreparable harm if they lose the Subject Property by

18   foreclosure.

19        30.    The Barks request a preliminary and permanent injunction that OneWest cannot

20   foreclose on the Deed of Trust by trustee sale other means of foreclosure.

21       WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as

22   follows:

23   **ON THE FIRST CAUSE OF ACTION**

24   1.     For Rescission of the Note and Deed of Trust;

25   2.     For restitution of sums paid;

26   3.     For an accounting offset for damages caused by Defendants' misrepresentation;

27   **ON THE SECOND CAUSE OF ACTION**

28   4.     For damages according to proof;

1    5.     For punitive damages;

2    **ON THE THIRD CAUSE OF ACTION:**

3    6.     For a preliminary and permanent injunction against Defendants to prevent

4           foreclosure on the Note and/or Deed of Trust.

5    **ON ALL CAUSES OF ACTION**

6    7.     For costs of suit incurred herein;

7    8.     For expert fees;

8    9.     For reasonable attorney's fees if provided by contract or law; and

9    10.   For such other and further relief as this Court may deem just and proper.

10                     RUSSO & DUCKWORTH, LLP

11

12   Dated: May / 2 . 2011       By:_____

13                     J. Scott Russo
                        Attorneys for Plaintiffs

14                     James R. Barks and Daphne Barks

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 2

**SUMMONS** *on First Amended Complaint*                                    **SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

ONEWEST BANK, FSB; RON MARTINDALE, an individual; and
DOES 1-50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JAMES R. BARKS, an individual; DAPHNE BARKS, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*  Orange County Superior Court<br><br>700 Civic Center Drive West<br>Santa Ana, CA 92701 | CASE NUMBER:<br>*(Número del Caso):*<br>30-2011-00474722 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
J. Scott Russo, Esq., Russo & Duckworth, LLP, 9090 Irvine Center Dr., 2nd Fl., Irvine, CA 92618

| | | |
|---|---|---|
| DATE:<br>*(Fecha)* | Clerk, by<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**
*on First Amended Complaint*

412.20, 465

1  J. SCOTT RUSSO (STATE BAR NO. 155631)
   RUSSO & DUCKWORTH, LLP
2  9090 Irvine Center Drive, 2nd Floor
   Irvine, California 92618
3  Telephone No. (949) 752-7106
   Facsimile No. (949) 752-0629
4

5  Attorneys for Plaintiffs
   James R. Barks and Daphne Barks
6

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8          FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

9

10  JAMES R. BARKS, an individual; DAPHNE       Case No.: 30-2011-00474722
    BARKS, an individual,                        Honorable Franz Miller, Dept. C-14
11                                               **FIRST AMENDED COMPLAINT FOR:**
                 Plaintiffs,
12                                               **1) RESCISSION OF PROMISSORY
         vs.                                      NOTE AND DEED OF TRUST BASED
13                                                ON FRAUD;**
                                                 **2) INTENTIONAL AND NEGLIGENT
14  ONEWEST BANK, FSB;  RON                       MISREPRESENTATION AND**
    MARTINDALE, and individual; and DOES        **3) INJUNCTIVE RELIEF; AND**
15  1-50, inclusive,                            **4) BREACH OF CONTRACT**
16               Defendants.                     **(JURY TRIAL DEMANDED)**
17

18

19         For causes of action against Defendant One West Bank, FSB, successor in

20  interest to La Jolla Bank, FSB ("OneWest Bank"), Ron Martindale, and DOES 1-50

21  (collectively "Defendants"), Plaintiffs James R. Barks and Daphne Barks ("Plaintiffs" or

22  "Barks") allege as follows:

23                                   <u>**PARTIES**</u>

24         1.    Plaintiffs James R. Barks ("Mr. Barks") and Daphne Barks are individuals

25  and a married couple now residing in the State of Missouri.

26         2.    Plaintiffs are informed and believe, and based thereon allege, that

27  Defendant OneWest Bank, FSB is a federally insured bank with offices in the County of

28  Orange, State of California.  On February 19, 2010, La Jolla Bank, FSB ("La Jolla

                                          -1-
                          FIRST AMENDED COMPLAINT

1  Bank") was closed by the Office of Thrift Supervision and the Federal Deposit Insurance

2  Company (FDIC) as receiver. At that time, all deposit accounts and, as represented by

3  the FDIC, the loan at issue in this case and all liabilities associated with the loan and the

4  Barks' claims herein, were transferred from La Jolla Bank to OneWest Bank. On May

5  18, 2010, the Barks submitted the same claims in this First Amended Complaint to the

6  FDIC as receiver for La Jolla Bank.  On May 20, 2010, the FDIC rejected the claims,

7  representing that OneWest Bank has assumed the loan and liability and therefore the

8  claim against the FDIC was not proper.  OneWest Bank has stipulated that, if 12 U.S.C.

9  1821 applied to this lawsuit, OneWest Bank has waived the defense that this lawsuit

10  was filed more than 60 days after the FDIC rejected the claims.

11       3.     Defendant Ron Martindale ("Martindale") is an individual.  The Barks are

12  informed and believe, and based thereon allege, that Martindale resides in either the

13  Counties of Orange or San Diego, California.  The Barks are informed and believe, and

14  based thereon allege, that Martindale was at all times relevant to this complaint an

15  officer and authorized agent of La Jolla Bank.

16       4.     Upon information and belief, Plaintiffs allege that at all times mentioned

17  herein each of the Defendants was and now is the agent, servant, employee,

18  representative, and alter ego of each of the remaining Defendants, is the parent,

19  successor, subsidiary, and/or otherwise affiliated with the remaining Defendants, and in

20  doing the things hereinafter alleged were acting within the scope of its or his authority of

21  such agent, servant, employee, representative, and alter ego with permission and

22  consent of the remaining Defendants.

23  **FIRST CAUSE OF ACTION**

24  **(RESCISSION BASED ON FRAUD)**

25  **(Against OneWest and DOES 1 through 25, inclusive)**

26       5.     Plaintiffs reallege and incorporate all prior paragraphs as if fully set forth at

27  length.

28

FIRST AMENDED COMPLAINT

1    6.    Plaintiff James R. Barks has been a builder of custom homes for sale in
2  Southern California.  The Barks have received acquisition and construction loans from
3  La Jolla Bank.

4    7.    The real property at issue is 233 Morning Canyon, Corona del Mar,
5  California ("Subject Property").

6    8.    In November 2007, the Barks identified the Subject Property for re-
7  development with a new custom home. The purchase price for the Subject Property
8  would be $3,250,000. The existing property owner had approved plans for the new
9  home. The Barks applied for a new loan from La Jolla Bank for both acquisition and
10  construction. Martindale handled the loan for La Jolla Bank. There was to be swing loan
11  for acquisition to be consolidated with the construction loan.

12    9.    On November 27, 2007, Martindale sent Mr. Barks the e-mail enclosed as
13  **Exhibit "A"** which contained an Underwriting Analysis for an acquisition swing loan and
14  construction loan. The total loan amount was to be $3,475,000 ("Loan Amount").  La
15  Jolla Bank's appraised value of the completed project was $6,000,000. The
16  Underwriting Analysis required the Barks to pay a down payment of $1,137,500 and
17  "L.I.P. Deposit" of $26,373.  Martindale's e-mail stated "I spoke to Dave [Yoder] and La
18  Jolla Bank would offer you a 65% LTV [loan to value], 2 year swing loan for the
19  acquisition at 7.5% with ¾ point…and then a construction loan for 18 months at prime +
20  floating and ½ point on new money." 65% loan to value was a $3,900,000 loan.

21    10.    The Barks executed and returned the Underwriting Analysis to Martindale.
22  The Underwriting Analysis states that the "Land Draw" portion of the Loan Amount, i.e.,
23  the "swing loan", was to be $2,112,000.  On December 21, 2007, La Jolla Bank
24  provided the "swing loan" Promissory Note for $2,080,000.   Enclosed as **Exhibit "B"** is
25  a copy of the Promissory Note (the "Note") and Deed of Trust ("Deed of Trust"), signed
26  by the Barks. The terms were as set forth in the Underwriting Analysis.

27    11.    The original of the Underwriting Analysis is in Defendants' possession.
28  The Barks do not have the executed documents.

12.     On December 28, 2007, escrow closed on Barks' purchase of the Subject Property. The Barks deposits into escrow totaled $1,207,800.  La Jolla Bank paid $2,080,000.

13.     Upon the close of escrow, the Barks secured a building permit and demolished the existing structures on the Subject Property and commenced grading in contemplation of the new construction.

14.     In April 2008, the Barks were ready to start construction of the new home. Mr. Barks advised Martindale that the Barks were ready for the construction funding and the Barks provided all the documentation requested.  La Jolla Bank was slow in providing the paperwork for the construction funding.

15.     On June 9, 2008, Martindale sent barks the "Courtesy Notice Of Loan Terms", a copy which is enclosed together with the e-mail transmittal as **Exhibit "C"**. The loan terms were for a $3,450,000[1] loan, thus, incorporating the swing loan. The terms were as set forth in the Underwriting Analysis, with one major change; the L.I.P. Deposit was increased from $26,373 to $287,390.  Mr. Barks called Martindale and asked what the L.I.P. Deposit was and was told that it was "additional cash Barks had to put into the project" himself before he would receive the construction financing. Barks argued that Martindale never advised him that any more money was required. The Barks did not have the additional $261,217 available to put into the project and La Jolla Bank refused to provide the balance of the Loan Amount.

16.     The Barks are informed and believes, and based thereon allege, that Martindale never had received loan committee approval for the construction loan portion of the Loan Amount.  The Barks are informed and believe, and based thereon alleges, that David Yoder, Director of Loan Originations and Vice President of La Jolla Bank, had not secured approval for a 65% loan to value loan, based on a $6,000,000 appraised value, which was up to $3,900,000, and that Martindale's states were

---

[1] It is unclear why the Courtesy Notice Of Loan Terms was for a loan amount of $3,450,000 instead of $3,475,000.

1  knowingly false and intended to induce the Barks to enter into the Land Draw loan to

2  generate loan commissions, knowing but not telling the Barks that they may need to pay

3  substantially more money.

4         17.     The Barks would not have purchased the Subject Property, signed the

5  Note or Deed of Trust, if the $287,390 L.I.P. Deposit had been in the Underwriting

6  Analysis or otherwise had been disclosed.  The Barks would not have purchased the

7  Subject Property, signed the Note or Deed of Trust, but for Martindale's representation

8  that the 65% loan to value had already been approved. Barks reliance upon

9  Martindale's representations was reasonable.

10         18.     The Barks were not able to secure construction financing from another

11  lender. Because La Jolla Bank refused to provide Loan Amount, the project came to a

12  standstill and the new home was never constructed.

13         19.     The building permits expired and the City of Newport Beach forced the

14  Barks to bring the lot at the Subject Property back to its original grade.  The Barks paid

15  $130,602 in construction costs.

16         20.     But for Martindale's misrepresentation, the new home would have been

17  constructed within 18 months and it would have been sold for at least the $4,638,873

18  cost of the project.

19         21.     Since June 2008, the value of the Subject Property has declined due to

20  overall market conditions. The principal on the $2,080,000 Promissory Note became

21  due and payable on January 1, 2010, when the note matured.  Barks was forced to

22  default on the $2,080,000 Promissory Note and stopped making interest payments.

23  Prior to defaulting on the $2,080,000 Promissory Note, Barks paid $199,470 in interest

24  payments.

25         22.     In its present condition, the fair market value of the Subject Property to a

26  builder is less than the obligation, principal and accrued interest, on the $2,080,000

27  Note.  Thus, if La Jolla Bank, now OneWest, proceeds with a foreclosure or trustee

28  sale, the Barks have lost their $1,207,800 original investment from December 2007,

1   $199,470 in interest payments and $130,602 in construction costs, all because of

2   Defendants' misrepresentations.

3      23.   The Barks demand rescission of the Note and Deed of Trust, restitution of

4   the sums paid, together with an accounting and offset for the sums they spent in

5   reliance upon Defendants' misrepresentations.

6                          **SECOND CAUSE OF ACTION**

7            **(INTENTIONAL AND NEGLIGENT MISREPRESENATION)**

8              **(Against Martindale and DOES 1 through 25, inclusive)**

9      24.   Plaintiffs reallege and incorporate all prior paragraphs as if fully set forth at

10  length.

11     25.   The Barks reasonably relied upon Defendants' false representations,

12  which were intentional, fraudulent and malicious, with the intention on the part of

13  Defendants, and each of them, of depriving Plaintiff of property or legal rights or

14  otherwise causing injury.  At a minimum, the misrepresentations by Defendants were

15  unreasonable, but nevertheless the Barks reasonably relied upon the

16  misrepresentations. As a result of Defendants' conduct, and the Barks reasonable

17  reliance, the Barks have been damaged in an amount to be proved at the time of trial.

18     26.   Defendants' conduct was willful, wanton and reckless and intended to

19  enrich Defendants at Plaintiffs' expense.  Plaintiffs' allege punitive damages must be

20  awarded to deter and punish Defendants.

21                          **THIRD CAUSE OF ACTION**

22                          **(INJUNCTIVE RELIEF)**

23              **(Against One West and DOES 1 through 25, inclusive)**

24     27.   Plaintiffs reallege and incorporate all prior paragraphs as if fully set forth at

25  length.

26     28.   On April 20, 2011, Defendants recorded a Notice of Trustee's Sale,

27  Unified Sale, a true and correct copy which is attached hereto as **Exhibit "D"**.

28  Defendants have scheduled a trustee sale to foreclose on the Note and Deed of Trust

for May 20, 2011. The Note and Deed of Trust were procured by fraud and should be adjudicated rescinded and unenforceable. The Barks first learned about the Notice of Trustee's Sale on May 6, 2011.  The Barks are informed and believe and based thereon allege that OneWest and its trustee did not comply with legal requirements for providing notice in order to proceed with the Trustee's Sale.  The Barks are informed and believe and based thereon allege that OneWest and its trustee have not complied with the requirements of Civil Code Section 2924. The Barks are informed and believe, and based thereon allege, that since the filing of the Complaint in this lawsuit, OneWest has continued the Trustee's Sale to July 18, 2011.

29.     The Barks will suffer irreparable harm if they lose the Subject Property by foreclosure.

30.     The Barks request a preliminary and permanent injunction that OneWest cannot foreclose on the Deed of Trust by trustee sale other means of foreclosure.

## FOURTH CAUSE OF ACTION

### Breach of Contract

### (Against One West and DOES 1 through 25, inclusive)

31.     The Barks reallege and incorporate all prior paragraphs as if fully set forth at length.

32.     The Barks are informed and believe, and based thereon allege, that they have performed all conditions, covenants and promises required by them to be performed in accordance with the terms and conditions of the parties agreement, as set forth in the Underwriting Analysis, except those that have been excused or prevented by Defendants' breaches.

33.     But for La Jolla Bank's breach of it loan commitment, the new home would have been constructed within 18 months and it would have been sold for at least the $4,638,873 cost of the project.  The expected $1,300,000 profit may not have been achieved, but there is no question that Barks would have recovered his investment and La Jolla Bank would have been paid in full on the Loan Amount.

FIRST AMENDED COMPLAINT

1    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of

2  them, as follows:

3    **ON THE FIRST CAUSE OF ACTION**

4    1.    For Rescission of the Note and Deed of Trust;

5    2.    For restitution of sums paid;

6    3.    For an accounting offset for damages caused by Defendants'

7          misrepresentation;

8    **ON THE SECOND CAUSE OF ACTION**

9    4.    For damages according to proof;

10   5.    For punitive damages;

11   **ON THE THIRD CAUSE OF ACTION:**

12   6.    For a preliminary and permanent injunction against Defendants to prevent

13         foreclosure on the Note and/or Deed of Trust.

14   **ON THE FOURTH CAUSE OF ACTION**

15   7.    For damages according to proof

16   **ON ALL CAUSES OF ACTION**

17   8.    For costs of suit incurred herein;

18   9.    For pre-judgment interest as provided by law;

19   10.   For expert fees;

20   11.   For reasonable attorney's fees if provided by contract or law; and

21   12.   For such other and further relief as this Court may deem just and proper.

22                                    RUSSO & DUCKWORTH, LLP

23

24   Dated:  June 2,  2011          By:

25                                    J. Scott Russo
                                     Attorneys for Plaintiffs
26                                   James R. Barks and Daphne Barks

27

28

**From:** Ron Martindale [mailto:⸱   ⸱artindale@ljbank.com]
**Sent:** Tuesday, November 27, 2007 4:32 PM
**To:** rbarks99@mindspring.com
**Subject:** Construction analysis

Ron I spoke to Dave and La Jolla Bank would offer you a 65% LTV, 2year swing loan for the acquisition at 7.50% with ¾ point (I will try and reduce this to ½ point) and then a construction loan for 18 months at prime +1 floating and ½ point on new money  Call with any questions/comments on either office number below or cell     (562) 453-7373.

Regards,

Ron Martindale
Regional Loan Specialist
La Jolla Bank
(949) 454-4107 Office   ext. 1402
(949) 454-6950 Fax
ron.martindale@ljbank.com

5/14/2010

$A$



**LA JOLLA BANK, FSB**
**UNDERWRITING ANALYSIS**
**CONSTRUCTION LOANS**

Primary Underwriting by     Ron Martindale

| | | | | | |
|---|---|---|---|---|---|
| Construction Only | X | | Const/commitment | | 30 Year Construction |

**LOAN NUMBER:**
PROPERTY ADDRESS:   Morning Canyon
**BORROWER:** Ron Barks
Corona Del Mar, CA
**GUARANTOR:** Same
COUNTY:   Orange
**CONTRACTOR:** Same

**CONSTRUCTION LOAN REQUEST:**

| | | | |
|---|---|---|---|
| Loan Amount | $3,475,000. | per sq. ft: | #DIV/0! |
| Loan Term | 18 | | |
| LJB Fee ($5 / %): | $ 6,812.00 | 0.50% pts. New money | |
| Broker Fee | - | 0.00% pts. | |
| Commitment Fee | | * Pat | |
| Start Rate:* | 8.500% | # of mos. | 1 |
| Interim Rate | | # of mos. | |
| Permanent Rate | | # of mos. | |
| Index | Prime | Margin: | 1.000% |
| Adjustments | | Chg. Cap: | |
| Floor | | Ceiling: | |
| Prepayment Pnlty? (y/n) | | | |
| Penalty Terms: | | | |

**BORROWER/GUARANTOR'S DEBT RATIOS:**

| | |
|---|---|
| Housing Ratio | |
| Total Debt Ratio | |
| Liquidity After Closing | $0 |

**LAND DATA:**

| | |
|---|---|
| Land Cost | $3,250,000 |
| Purchase Date | Dec-07 |
| Amount Owing. | $2,112,500 |

**PROJECT DESCRIPTION:**

| | |
|---|---|
| Type of Project | Construction |
| Project Description | SFR |
| Size of Land | |
| Unit Size(s) | |
| | |
| Gross Living Area | |
| Owner Occupied? | No |

**CONSTRUCTION FUNDING SUMMARY:**

| | | | |
|---|---|---|---|
| Onsites | $1,100,000. | per sq. ft | #DIV/0! |
| Offsites | $ | per sq. ft: | #DIV/0! |

(Fees are as quoted, and are subject to change)

**INDIRECT LOAN COSTS**

| | |
|---|---|
| Land Draw | $2,112,500 |
| Interest Reserve | $265,838 |
| Total retail fees | $6,812 |
| Funding or Escrow | $3,000. |
| Title Insurance | $10,000 |
| Tax Service | $500. |
| Recording | $100 |
| Documents | $500 |
| Processing Fee | $500 |
| Flood | $18. |
| UCC1 Filing Fee | $65 |
| Form 4506 | $40 |
| Appraisal/CR | $1,500 |
| **TOTAL REQUIRED FOR COMPLETION:** | $3,501,373 |

**CRA MONITORING INFORMATION:**

| | | | |
|---|---|---|---|
| Map Page # | 0 | Census Tract Number | 0.00 |
| One or Outs | Within Assesment Area? | | Code |
| See Code Sht | C T Income vs MSA Median | | Code |
| Y/N | Community-Dev-Spel CRA Loan | | Code |
| Y/N | Minority Census Tract | | Code |
| See Code Sht | Borrower's Income Vs MSA Cnty CT * | | Code |
| | CRA Code (Code 3 requires 4 or 5) | | Code |
| Affordable Housing | | | |
| | Total Units | | Affordable Units |

**EQUITY INVESTED:**

| | |
|---|---|
| Down Payment | $1,137,500 |
| Pre Development | $ |
| Other | $ |
| Land Profit | $ |
| L I P Deposit | $26,373 |
| **TOTAL EQUITY IN PROJECT:** | $1,163,873 |

**ANY DEVIATIONS FROM LOAN POLICY? (Y N)**
No

| | | | |
|---|---|---|---|
| **TOTAL COST OF PROJECT:** | $4,638,873 | per sq. ft | #DIV 0' |
| **EQUITY TO COST:** | 25.09% | | |
| **LOAN AMOUNT:** | $3,475,000 | per sq. ft | #DIV 0' |
| **APPRAISED VALUE:** | $6,000,000 | | #DIV/0' |
| **LOAN TO APPRAISED VALUE:** | 57.92% | | |

LOAN SUMMARY

RECOMMEND FILE FOR APPROVAL BY:     _____   _____   _____
RECOMMEND FILE FOR DENIAL BY:        _____   _____   _____

**LOAN COMMITTEE APPROVAL**

| | | | |
|---|---|---|---|
| Approved Loan Amount | _____ | Approved as Submitted? | _____ |
| Cross Collateral? | _____ | Approved with Changes? | _____ |
| BY | _____ | DATE | _____ |
| BY | _____ | DATE | _____ |
| BY | _____ | DATE | _____ |

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $2,080,000.00 | 12-21-2007 | 01-01-2010 | 1057023169 | | | | PM | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | JAMES R. BARKS (SSN: 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)<br>DAPHNE BARKS (SSN: 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)<br>25867 WEST SHADY GROVE PLACE<br>CALABASAS, CA 91302 | Lender: | LA JOLLA BANK, FSB<br>330 WEST VALLEY PARKWAY<br>ESCONDIDO, CA 92025 |
|---|---|---|---|

**Principal Amount: $2,080,000.00     Interest Rate: 7.500%     Date of Note: December 21, 2007**

**PROMISE TO PAY.** I ("Borrower") jointly and severally promise to pay to LA JOLLA BANK, FSB ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million Eighty Thousand & 00/100 Dollars ($2,080,000.00), together with interest at the rate of 7.500% per annum on the unpaid principal balance from December 28, 2007, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in one principal payment of $2,080,000.00 plus interest on January 1, 2010. This payment, due on January 1, 2010, will be for all principal and all accrued interest not yet paid. In addition, I will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning February 1, 2008, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to any unpaid collection costs; and then to any late charges. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under my payment schedule. Rather, early payments will reduce the principal balance due. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: LA JOLLA BANK, FSB; 330 WEST VALLEY PARKWAY; ESCONDIDO, CA 92025.

**LATE CHARGE.** If a payment is 16 days or more late, I will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by 3.000 percentage points.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent, a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Cure Provisions.** If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if I, after receiving written notice from Lender demanding cure of such default: (1) cure the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of SAN DIEGO County, State of California.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $10.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**COLLATERAL.** I acknowledge this Note is secured by the following collateral described in the security instrument listed herein: a Deed of Trust dated December 21, 2007, to a trustee in favor of Lender on real property located in ORANGE County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**BALLOON PAYMENT NOTICE.** THIS LOAN CONTAINS PROVISIONS THAT ALLOW FOR A BALLOON PAYMENT AT MATURITY.

**Successor Interests.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: LA JOLLA BANK, FSB, 330 WEST VALLEY PARKWAY, ESCONDIDO, CA 92025.

**General Provisions.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any

**Exhibit** _O_

Loan No: 1057023189  **PROMISSORY NOTE**
**(Continued)**

Page 2

of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

**PRIOR TO SIGNING THIS NOTE, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I, AND EACH OF US, AGREE TO THE TERMS OF THE NOTE.**

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____
JAMES R. BARKS

X _____
DAPHNE BARKS

LASER PRO Lending, Inc. 6.16.10.021 Copr. Harland Financial Systems, Inc. 1997, 2007  All Rights Reserved.   CA  (c:\HARLPRO\PLA\05.FC TR-2311 PR-4)



RECORDATION REQUESTED BY:
LA JOLLA BANK, FSB
390 WEST VALLEY PARKWAY
ESCONDIDO, CA 92025

_____  FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS DEED OF TRUST is dated December 21, 2007, among JAMES R. BARKS AND DAPHNE BARKS, HUSBAND AND WIFE AS JOINT TENANTS, whose address is 25867 WEST SHADY GROVE PLACE, CALABASAS, CA 91302 ;("Trustor"); LA JOLLA BANK, FSB, whose address is 390 WEST VALLEY PARKWAY, ESCONDIDO, CA 92025 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and OLD REPUBLIC TITLE COMPANY, whose address is 1660 HOTEL CIRCLE NORTH, SUITE 500, SAN DIEGO, CA 92108 (referred to below as "Trustee").

CONVEYANCE AND GRANT.  For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in ORANGE County, State of California:

LOT 9 OF TRACT NO. 1116, SHORECLIFFS, IN THE CITY OF NEWPORT BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 36, PAGES 19 AND 20 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

The Real Property or its address is commonly known as 233 MORNING CANYON ROAD, CORONA DEL MAR, CA 92625.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938.  In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.  THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE.  Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

POSSESSION AND MAINTENANCE OF THE PROPERTY.  Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

Possession and Use.  Until the occurrence of an Event of Default, Trustor may  (1)  remain in possession and control of the Property;  (2)  use, operate or manage the Property; and  (3)  collect the Rents from the Property.

Duty to Maintain.  Trustor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws.  Trustor represents and warrants to Lender that:  (1)  During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing,  (a)  neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to

 

**DEED OF TRUST**
**(Continued)**

determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced,

Loan No: 1057023169



**DEED OF TRUST**
**(Continued)**

Page 3

any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

Maintenance of Insurance. Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgage clause in favor of Lender, together with such other hazard and liability insurance as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

Application of Proceeds. Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**LENDER'S EXPENDITURES.** If Trustor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Trustor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

Title. Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

Defense of Title. Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance With Laws. Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

# DEED OF TRUST
## (Continued)

**Survival of Promises.** All promises, agreements, and statements Trustor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Trustor's Indebtedness is paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably

 

Loan No: 1057023189

## DEED OF TRUST
### (Continued)

Page 5

appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** At Lender's option, Trustor will be in default under this Deed of Trust if any of the following happen:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Break Other Promises.** Trustor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Deed of Trust or in any agreement related to this Deed of Trust.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**False Statements.** Any representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Trustor, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of Trustor's property in which Lender has a lien. This includes taking of, garnishing of or levying on Trustor's accounts with Lender. However, if Trustor disputes in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if Trustor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Trustor's obligations under this Deed of Trust, after Trustor's failure to do so, that decision by Lender will not affect Lender's right to declare Trustor in default and to exercise Lender's remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this



Loan No: 1057023169

**DEED OF TRUST**
**(Continued)**

Page 6

Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums

 

Loan No: 1057023189

**DEED OF TRUST**
**(Continued)**

Page 7

provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender will have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of ORANGE County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any person may change his or her address for notices under this Deed of Trust by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors. It will be Trustor's responsibility to tell the others of the notice from Lender.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** What is written in this Deed of Trust and in the Related Documents is Trustor's entire agreement with Lender concerning the matters covered by this Deed of Trust. To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of SAN DIEGO County, State of California.

**Joint and Several Liability.** All obligations of Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Trustor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does

 

not mean Trustor will not have to comply with the other provisions of this Deed of Trust. Trustor also understands that if Lender does consent to a request, that does not mean that Trustor will not have to get Lender's consent again if the situation happens again. Trustor further understands that just because Lender consents to one or more of Trustor's requests, that does not mean Lender will be required to consent to any of Trustor's future requests. Trustor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following words shall have the following meanings when used in this Deed of Trust:

**Beneficiary.** The word "Beneficiary" means LA JOLLA BANK, FSB, and its successors and assigns.

**Borrower.** The word "Borrower" means JAMES R. BARKS and DAPHNE BARKS and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means LA JOLLA BANK, FSB, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Note.** The word "Note" means the promissory note dated December 21, 2007, in the original principal amount of $2,080,000.00 from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in



Loan No: 1057023169

**DEED OF TRUST**
**(Continued)**

Page 9

---

this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means OLD REPUBLIC TITLE COMPANY, whose address is 1660 HOTEL CIRCLE NORTH, SUITE 500, SAN DIEGO, CA 92108 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means JAMES R. BARKS and DAPHNE BARKS.

EACH TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH TRUSTOR AGREES TO ITS TERMS.

TRUSTOR:

X _____
JAMES R. BARKS

X _____
DAPHNE BARKS

---

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _Missouri_ )
                                                     ) SS
COUNTY OF _Greene_ )

On _December 24_, 20_07_ before me, _KELLY RADFORD, NOTARY_ AVP
                                                                                    (here insert name and title of the officer)

personally appeared JAMES R. BARKS and DAPHNE BARKS, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

> KELLY RADFORD
> Notary Public - Notary Seal
> State of Missouri
> Commissioned for Greene County
> My Commission Expires: May 16, 2009
> 05404694

(Seal)

**From:** Ron Martindale [mailto:ron.martindale@ljbank.com]
**Sent:** Monday, June 09, 2008 9:41 AM
**To:** Ron Barks
**Subject:** RE: Courtesy Notice

Sorry about that  Here it is. Thanks

Regards,

Ron Martindale
Regional Loan Specialist
La Jolla Bank
(949) 454-4107  Office    ext. 1402
(949) 454-6950  Fax
ron.martindale@ljbank.com

--------------------------------------------------------------------
**From:** Ron Barks [mailto:rbarks99@mindspring.com]
**Sent:** Sunday, June 08, 2008 3:58 PM
**To:** Ron Martindale
**Subject:** RE: Courtesy Notice

Ron there is no attachment with this email.  Please send me the courtesy notice to sign

--------------------------------------------------------------------
**From:** Ron Martindale [mailto:ron.martindale@ljbank.com]
**Sent:** Thursday, June 05, 2008 12:06 PM
**To:** Ron Barks
**Subject:** Courtesy Notice

Please sign and fax back to Christina at (760) 233-2123. Thank you

Regards,

5/18/2010                        D

**Exhibit**   *C*

# La Jolla Bank, FSB

COURTESY NOTICE OF LOAN TERMS

June 5, 2008

Dear Borrower,

In anticipation of the upcoming funding of your loan request, we ask that you take a moment to review the loan terms of the proposed loan funding. The terms outlined below will be utilized in the preparation of your loan documents, therefore it is important that all terms are accurate and acceptable to you.

Upon receipt of any outstanding loan conditions and final loan approval your file will be ready for loan documents.

| | |
|---|---|
| Borrower's Name: | James R. Barks and Daphne Barks |
| Loan Amount: | $3,450,000.00 |
| Loan Term: | 18 Months |
| Loan Amortization: | N/A |
| Payment Type: | Interest Only |
| Start Rate: | 7.500% |
| Index: | Prime+ 2.250% |
| Rate Adjustment: | Monthly |
| Payment Adjustment: | Monthly |
| Rate cap/adjustment | N/A |
| Ceiling Rate: | 7.500% |
| Floor Rate: | 7.500% |
| Prepayment Penalty: | N/A |
| La Jolla Bank Points: | $6,600.00 |
| Broker Points: | N/A |
| L.I.P. Deposit: | $287,390.00(E) |

Who will sign construction vouchers? _____

This letter does not constitute a loan commitment or conditional loan approval. It is the intent of this letter, to provide you with a written understanding of the terms and conditions under which this loan request is being processed.

Please contact the undersigned, or your Loan Officer for a status of your loan transaction (outstanding loan conditions needed to complete your loan approval, loan terms, etc).

Respectfully,

Christina Villa
Loan Closer
(760) 233 2330 ext. 1034

## ACKNOWLEDGEMENT OF ACCEPTANCE

Borrower(s) / Guarantor(s)

_____        _____
James R. Barks                              Date

_____        _____
Daphne Barks                                 Date

Please fax your receipt and acceptance of these terms to (760) 233-2123 or (760) 233-2133.

389 N. Escondido Blvd.
Escondido, CA 92025
(760) 233 - 2330

RECORDING REQUESTED BY

First American Title Insurance Company

AND WHEN RECORDED MAIL TO

First American Title Insurance Company
4380 La Jolla Village Drive, Suite 110
San Diego, CA  92122

Recording Requested By: DPS
On Behalf Of:

" **DPS** "

**This Document was electronically recorded by
DPS Norwalk C**

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

 18.00
**2011000200207** 08:00am 04/20/11
93 401 N34 4
0.00 0.00 0.00 0.00 9.00 0.00 0.00 0.00

Trustee Sale No. 426040    Loan No. 1057023189    Title Order No.
APN 052-201-23    TRA No.

Space above this line for recorder's use only

# NOTICE OF TRUSTEE'S SALE
## UNIFIED SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 12/21/07.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On 05/20/11 at 09:00AM, First American Title Insurance Company as the duly appointed Trustee under and pursuant to Deed of Trust Recorded on December 27, 2007 as Document No. 2007000754528 of official records in the Office of the Recorder of Orange County, California, executed by:  James R. Barks and Daphne Barks, as Trustor, La Jolla Bank, FSB, as Beneficiary, WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at time of sale in lawful money of the United States, by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state).  At: On the front steps to the entrance of the Orange Civic Center, 300 E. Chapman, Orange, CA., all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County, California describing the land and personal property therein:

See Exhibit "A" attached hereto and incorporated by reference herein for real property; and

See Exhibit "B" attached hereto and incorporated by reference herein for personal property

The property heretofore described is being sold "as is".  The street address and other common designation, if any, of the real property described above is purported to be: 233 Morning Canyon Road, Corona Del Mar, CA 92625.

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.  Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit:  $2,521,216.88 (Estimated)

Accrued interest and additional advances, if any, will increase this figure prior to sale.

1

**Exhibit** 

As of the date of this Notice of Sale, the current beneficiary is OneWest Bank, FSB (the "Current Beneficiary").  The Current Beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell.  The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located and more than three months have elapsed since such recordation.

DATE: 4/19/11

First American Title Insurance Company
4380 La Jolla Village Drive
Suite 110
San Diego, CA  92122
(858) 410-2158

_____
Vincent Tocco, Foreclosure Trustee

2

**Exhibit "A"**
**Legal Description**

Real property in the City of Newport Beach, County of Orange, State of California, described as follows:

LOT 9 OF TRACT 1116, IN THE CITY OF NEWPORT BEACH, SHORECLIFFS AS PER MAP RECORDED IN BOOK 36, PAGE(S) 19 AND 20 OF MISCELLANEOUS MAPS, RECORDS OF SAID COUNTY.

APN: 052-201-23

**Exhibit "B"**

Personal Property. The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

# PROOF OF SERVICE
### (CCP §1013A(3) Revised)

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

      I am employed in the above County, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 9090 Irvine Center Drive, 2nd Floor, Irvine, California 92618.

      On June 2, 2011, I served the foregoing documents described as: **SUMMONS ON FIRST AMENDED COMPLAINT; FIRST AMENDED COMPLAINT** on the interested party in this action in the manner indicated below and as further indicated on the attached Service/Mailing List:

**[XXX]** by placing a true copy thereof enclosed in a sealed envelope addressed to each of the interested party as indicated on the attached Service/Mailing List.

**[ X ]**  **BY MAIL:**  I deposited such envelope in the mail at Irvine, California.  The envelope was mailed with postage thereon fully prepaid.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.  Executed on June 2, 2011, at Irvine, California.

**[ ]**  **BY PERSONAL SERVICE:**  I caused such document to be hand delivered to the offices of the addressee listed on the attached service/Mailing List.  Executed on  2011, at Irvine, California.

**[ ]**  **BY TELECOPIER:**  I forwarded the above document via telecopier to the interested party at the telecopier numbers noted on the attached Service/Mailing List.  The transmission report indicated that the transmission was complete and without error or interruption.  Executed on May 16, 2011 at Irvine, California.

**[ ]**  **BY OVERNIGHT DELIVERY:**  I am readily familiar with the Law Offices of J. Scott Russo, APC's practice for collection and processing of correspondence for overnight delivery with Overnite Express.  Pursuant to such practice, all correspondence is deposited in a regularly maintained box or delivered to any authorized Overnite Express courier in the ordinary course of business on the date it is generated.  I know that the envelope was sealed, and with delivery fees thereon fully prepaid, placed for collection on this date, following ordinary business practices in the United States, at Irvine, California.  Executed on, , 2010, at Irvine, California.

      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

      Executed on **June 2, 2011,** at Irvine, California.

Barbara Yots

**SERVICE/MAILING LIST**

**DYKEMA GOSSETT LLP**
**J. Kevin Snyder, Bar No. 107509**
**333 South Grand Avenue, Ste. 2100**
**Los Angeles, CA 90071**
**ksnyder@dykema.com**

**Telephone:  (213) 457-1800**
**Facsimile:   (213) 457-1850**

# EXHIBIT 3

1   J. SCOTT RUSSO (STATE BAR NO. 155631)
    RUSSO & DUCKWORTH, LLP
2   9090 Irvine Center Drive, 2nd Floor
    Irvine, California 92618
3   Telephone No. (949) 752-7106
    Facsimile No. (949) 752-0629
4

5   Attorneys for Plaintiffs
    James R. Barks and Daphne Barks
6

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8          FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

9

10  JAMES R. BARKS, an individual; DAPHNE        Case No.: 30-2011-00474722
    BARKS, an individual,                        **Assigned for All Purposes to:**
11
                   Plaintiffs,                   **Honorable Franz Miller**
12                                               **Dept. C-14**
13         vs.

14  ONEWEST BANK, formerly LA JOLLA             **STIPULATION AND [PROPOSED]**
    BANK, FSB; RON MARTINDALE, and               **ORDER RE SCHEDULE FOR MOTION**
15  individual; and DOES 1-50, inclusive,        **FOR PRELIMINARY INJUNCTION**

16                 Defendants.                   **DATE:  July 7, 2011**
                                                 **TIME:  1:30 p.m.**
17                                               **DEPT:  C-14**

18         THE PARTIES HERETO, BY AND THROUGH THEIR RESPECTIVE COUNSEL

19  OF RECORD STIPULATE AS FOLLOWS:

20         1.  Plaintiffs James R. Barks and Daphne Barks' (the "Barks") Motion for

21             Issuance of a Preliminary Injunction preventing Defendant OneWest Bank,

22             FSB ("OneWest") from selling the real property commonly known as 233

23             Morning Canyon Road, Corona Del Mar, California 92625 ("Subject Property")

24             pursuant to a Notice of Trustee's Sale will be filed by May 23, 2011 and set

25             for hearing July 7, 2011 at 1:30 p.m. in Department C-14 of the above-entitled

26             Court;

27

28                                         -1-
    ────────────────────────────────────────────────────
            STIPULATION AND [PROPOSED] ORDER RE SCHEDULING FOR
            MOTION FOR TRO AND OSC RE PRELIMINARY INJUNCTION

2.  Defendant OneWest will file any Opposition papers by June 13, 2011 and serve same via facsimile or overnight delivery;

3.  Plaintiffs Barks will file any Reply memorandum by June 24, 2011 and serve same via facsimile or overnight delivery;

IT IS SO STIPULATED:

DATED:  May 17, 2011                    RUSSO & DUCKWORTH, LLP



                                        By: _____
                                              J. Scott Russo
                                        Attorneys for Plaintiffs
                                        James R. Barks and Daphne Barks

DATED:  May 17, 2011                    DYKEMA GOSSETT LLP



                                        By: _____
                                              J. Kevin Snyder
                                        Attorneys for Defendant ONEWEST BANK,
                                        FSB

_____

IT IS SO ORDERED.



DATED:


                                        _____
                                        JUDGE OF THE SUPERIOR COURT

## PROOF OF SERVICE

(Code Civ. Proc. §§ 1013 and 2015.5)

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 333 South Grand Avenue, #2100, Los Angeles, California 90071.

On June 15, 2011, I served the foregoing documents described as **NOTICE OF REMOVAL TO FEDERAL COURT (UNDER 28 U.S.C. §§ 1332, 1441, DIVERSITY JURISDICTION)** on all interested parties in this action as follows:

### See Attached List.

☒ **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on the same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing on affidavit.

☐ **(BY PERSONAL SERVICE)** I delivered such envelope by hand to the offices of the addressee.

☐ **(BY OVERNIGHT SERVICE)** Via Federal Express

☐ **(BY FACSIMILE)** By transmitting in true copy thereof by facsimile from facsimile number (213) 457-1850 to the facsimile number(s) shown above.

☒ (Federal) I declare that I employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on June 15, 2011, at Los Angeles, California.

_____
Caroline Acossano

NOTICE OF REMOVAL TO FEDERAL COURT

1  JAMES R. BARKS, ET AL. VS. ONEWEST BANK, FSB, ET AL.

2  SAN DIEGO SUPERIOR COURT CASE NO.:  37-2010-00055695-CU-BC-NC

| | |
|---|---|
| J. Scott Russo, Esq.<br>RUSSO & DUCKWORTH, LLP<br>9090 Irvine Center Drive, 2nd Floor<br>Irvine, California 92618<br><br>(949) 752-7106<br>(949) 752-0629 - Facsimile | Attorney for Plaintiff<br>JAMES R. BARKS, and Individual and<br>DAPHINE BARKS, an Individual |

PAS01\205845.1
ID\VIK - 105636/0035

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

7

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐ ) | DEFENDANTS |
|---|---|
| JAMES R. BARKS, an individual; DAPHNE BARKS, an individual | ONEWEST BANK, FSB |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| J. Scott Russo, Esq.<br>Russo & Duckworth, LLP<br>9090 Irvine Center Drive<br>2nd Floor<br>Irvine, CA  92618<br>(949) 752-7106; Fax: (949) 752-0629 | J. Kevin Snyder, Esq./Vivian I. Kim, Esq.<br>Dykema Gossett, LLP<br>333 South Grand Avenue<br>Suite 2100<br>Los Angeles, CA  90071<br>(213) 457-1800; Fax: (213) 457-1850 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes  ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No     ☒ **MONEY DEMANDED IN COMPLAINT:** $ "In excess $330,072"

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. Section 1332 - Diversity Jurisdiction

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☒ 290 All Other Real Property | | | | |

| FOR OFFICE USE ONLY:  Case Number: | **SACV11-00901 RNB** |
|---|---|

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐  A. Arise from the same or closely related transactions, happenings, or events; or
                               ☐  B. Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐  C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐  D. Involve the same patent, trademark or copyright, **and** one of the factors identified above in a, b or c also is present.

**IX.  VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Missouri |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):**   _C. Kevin Snyder_                          Date June 14, 2011
                                                J. Kevin Snyder

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |